**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEMETRIUS BAILEY,** | : | **CIVIL NO. 1:CV-07-2238** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **MELISSA McMAHON, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Demetrius Bailey ("Bailey"), an inmate currently confined at the State Correctional

Institution at Coal Township, Pennsylvania, filed the above civil rights action pursuant to 42

U.S.C. § 1983.  The matter proceeds on an amended complaint.  (Doc. No. 27.)  Named as

Defendants are Department of Corrections officials as well as employees at the State

Correctional Institution at Huntingdon ("SCI-Huntingdon"), Bailey's former place of

confinement.  Also named as Defendants are Prison Health Services ("PHS") and Angela

Auman, a physician's assistant employed by PHS.  In the amended complaint, Bailey's claims

include the denial of access to the courts, retaliation, unsanitary health conditions and inadequate

medical and mental health care.  He also challenges the prison's commissary system.  Presently

pending are Bailey's second motion for the appointment of counsel (Doc. No. 150), motion for

court order (Doc. No. 154), and motion and supplemental motion for relief/sanctions/to compel

discovery (Doc. Nos. 139, 141.)  Also pending is the motion of Defendant Auman to dismiss a

proposed second amended complaint submitted by Bailey on October 6, 2011. (Doc. No. 155.)

I.    **Background**

Bailey claims that while confined at SCI-Huntingdon, he was denied access to the courts,

including the use of the law library, an adequate paging system, legal assistance and legal

materials.  He further complains that he was denied adequate medical and mental health

treatment and basic hygiene items,[1] and was required to wear shackles while in the library.  He

also asserts that he was subjected to health hazards in the Restricted Housing Unit ("RHU")

including the lack of an automatic sprinkler system, emergency lighting and fire alarms.  Bailey

further argues that he and other inmates are forced to inhale rat and mice urine and feces, and

that the showers contain roaches, fruit flies and fungus.  (Doc. No. 27, Amended Compl. ¶¶ 41-

43.)  In addition, Bailey contends that the DOC has created a monopoly with respect to the

commissary system, and sets forth claims of retaliation for his use of the grievance system and

filing lawsuits.  He argues that his grievances are all denied and that he was given a retaliatory

transfer for filing grievances.  The majority of these claims are set forth with respect to the

Corrections Defendants.

On March 19, 2009, the Court granted in part and denied in part a motion to dismiss the

amended complaint filed on behalf of PHS and Auman.  (Doc. No. 61.)  The motion was granted

to the extent that PHS was dismissed from this action.  The motion was denied with respect to

the Eighth Amendment inadequate medical care and retaliation claims against Auman.  The

parties then began engaging in discovery.  On September 21, 2010, the Court issued an opinion

addressing the lack of a response by the Corrections Defendants to Bailey's discovery requests.

(Doc. No. 91.)  Defendants were directed to provide Bailey with the outstanding responses

---

[1]  With respect to inadequate medical care, Bailey specifically references a chronic skin
condition where he experiences itching, burning, peeling and bleeding and also a hiatal hernia
for which the DOC will not provide surgery, and Gastroesophageal Reflux Disease that requires
a special diet.  With respect to hygienic items, Bailey complains about the soap inmates must
buy that "tears up his skin" when inmates use to be permitted moisturizing soaps such as Dove,
Dial and Irish Spring.  (Doc. No. 27 at ¶¶ 47, 54 and 56.)

within thirty (30) days.  In addition, a motion to compel discovery challenging the adequacy of discovery responses provided by Auman was denied.  A scheduling order was thereafter issued on October 13, 2010 directing that all discovery be completed within sixty (60) days and any dispositive motions filed within thirty (30) days from the close of discovery.  (Doc. No. 93.)

On July 1, 2011, a motion to compel discovery filed by Bailey against the Corrections Defendants was granted.  (Doc. No. 134.)  Defendants were directed to provide Bailey with the documents they had previously agreed to produce in their response to discovery served on October 21, 2010.[2]  A new dispositive motions filing date of September 1, 2011 was also imposed.  On August 29, 2011, the Court granted a motion by Corrections Defendants to enlarge the dispositive motions deadline in this matter, and stated that a new filing date would be imposed following the resolution of the discovery motions currently outstanding in this action. (Doc. No. 144.)

## II.    Discussion

### A.     Motion for Counsel

Presently pending is Bailey's second request for the appointment of counsel in this case. (Doc. No. 150.)  In the one (1) paragraph motion, Bailey states that counsel is needed because "it is getting difficult and complex to maintain this lawsuit due to the hurdles that prison officials, Attorney General is putting [him] through to litigate this effectively. . . ." (Id.)  In denying Bailey's earlier motion, the Court fully set forth the standard applied in analyzing an inmate's request for counsel.  (Doc. No. 61.)  As such, these principles will not be repeated herein. However, in applying Montgomery v. Pichak, 294 F.3d 492 (3dCir. 2002) and Tabron v. Grace,

---

[2]  This deadline was later extended until August 5, 2011.  (Doc. No. 138.)

6 F.3d 147, 153 (3d Cir. 1993), it is clear that counsel is still not warranted in this matter.  Even

assuming Bailey's case has arguable merit, he clearly has the ability to present his claims on his

own.  A simple review of the docket in this action confirms that he is a literate, coherent and, at

times, savvy litigator and is certainly capable of prosecuting this action without the assistance of

appointed counsel.  In addition, the issues involved are not complex, and Bailey has

demonstrated his understanding  of the legal process through the filing and opposing of motions.

For these reasons, the pending motion for counsel will be denied without prejudice.

### B.      Motion for Court Order

On October 6, 2011, Bailey submitted a proposed amended complaint in this action.

(Doc. No. 153.)  In this document he seeks to add seventeen (17) individuals to this action who

are employees at SCI-Smithfield (SCI-Smithfield), Pennsylvania.  He claims that he was given

an intentional retaliatory transfer out of SCI-Somerset to SCI-Smithfield.  He states that once he

arrived at SCI-Smithfield it was a hostile atmosphere where these individuals denied him his

legal materials and he was locked in the RHU where he was subjected to abuse and denied

medical care.  He also claims he was subjected to retaliation for filing lawsuits.  On October 25,

2011, Bailey filed a motion for order requesting this Court to direct the individuals named in his

proposed Amended Complaint to provide him with his legal property.  (Doc. No. 154.)  For the

reasons that follow, the Clerk of Court will be directed to strike the proposed amended complaint

from the record, and Bailey's motion for court order will be denied.

Federal Rule of Civil Procedure 15 addresses the issue of Amended and Supplemental

Pleadings.  Pursuant to Fed. R. Civ. P. 15(a)(1), a party may amend its pleading once as a matter

of course within 21 days after serving it, or if the pleading is one to which a responsive pleading

is required, 21 days after service of a responsive pleading or 21 days after service of a motion

under Rule 12(b), (e) or (f), whichever is earlier.  In all other cases, a party may amend its

pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P.

15(a)(2).

In light of the procedural status of the instant case, it is clear that Bailey would be

required to seek leave to submit a second amended complaint.  He has filed no such motion and,

on that basis alone, the Clerk of Court will be directed to strike the proposed document

submitted on October 6, 2011.[3]  (Doc. No. 153.)  This ruling, in turn, moots Bailey's pending

motion for a court order as it exclusively involves only those individuals named in the stricken

proposed amended complaint.  The Court will also deny as moot the motion of Defendant

Auman to dismiss the proposed amended complaint.  (Doc. No. 155.)

**C.      Motion/Supplemental motion for relief/sanctions**

**1.      Relevant procedural history**

Pending are motions Bailey has filed challenging responses the Corrections Defendants

---

[3] Under Rule 15, decisions regarding motions to amend pleadings rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion.  See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267 (3d Cir. 2001).  Even if Bailey had submitted a motion requesting leave to file the proposed amended complaint, his motion would have been denied.  A court may deny a request for leave to amend if it is apparent from the record that: (1) the moving party has demonstrated undue delay, bad faith or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice the other party.  Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003).  Prejudice to the opposing party is "the touchstone for the denial of leave to amend."  Cornell and Company, Inc. v. Occupational Safety and Health Review Commission, 573 F.2d 820, 823 (3d Cir. 1978).  In the instant case, the proposed amended complaint seeks to add numerous new Defendants employed at a completely different prison that have absolutely no connection to the claims raised in the standing complaint.  Plaintiff attempts to raise new and distinct claims with respect to said Defendants that are in no way related to the claims presently before the Court.

have provided to his discovery requests.  (Doc. Nos. 139, 141.)  Bailey submitted a Request for

the Production of Documents on June 23, 2009, wherein he sought the following:

> (1)     DOC policy and procedures manuals with respect to DC-ADM 001, 003, 007, 008, 201, 203, 801, 804, 815, 6.1.0, 6.3.1, 6.5.1, 13.1.1, 13.2.1 and 4.1.1.
>
> (2)     All mental health and medical records from time at SCI-Huntingdon from March 2007 through October 2007.
>
> (3)     Huntingdon's RHU mini law library policies on being shackled and not allowing two people to use the library together.
>
> (4)     All DC-14 and DC-15 files and notes at Huntingdon.
>
> (5)     Grievances #183912, #187318, #187558, #188856, #202112, #199098, #201025, #201419, #202113, #202754, #203323, #182853, #183329, #185414.
>
> (6)     DOC contract for commissary and RHU commissary list, complete records why commissary was changed, Grievances #197757 and #206286.
>
> (7)     Request Defendants to order staff to allow Bailey to gather affidavits from witnesses: Richard Sutton AM5242, Dwayne Combs FX2071, Jamiel Johnson GK4813, Josh Griffin, Timothy Schofield, Joseph Smith GE4240.

(Doc. No. 145, Ex. 1, 6/23/09 Request for Production of Documents.)  Following an order from

this Court, Defendants responded to the requests on October 21, 2010.  (Doc. No. 145, Ex. 2.)  In

response to Request #1, Defendants agreed to produce the administrative directives, but objected

to producing the procedure manuals on the basis they contained confidential security information

that was not relevant to Bailey's claims.  Defendants objected to Requests #2 and #4 on the basis

of confidentiality, relevancy and because the requests were overbroad.  Defendants did agree to

produce any non-confidential documents that were responsive to said requests.  In response to

Request #3, Bailey was informed that no such written policies exist.  Defendants did agree to

produce all documents responsive to Request #5.  Defendants objected to Request #6 as vague

and confusing.  They also objected to Request #7 as improper under Fed. R. Civ. P. 34.  (Doc.

No. 145, Ex. 2.)

A second request for the production of documents was served on Defendants on October

25, 2010, and contained four (4) requests.[4]  (Id., Ex. 3.)  The requests were either identical to or

sought more specific information with respect to the information requested regarding the

commissary contracts in Request #6 of Bailey's earlier discovery request.

Because Defendants never provided Bailey with the documents they agreed to produce in

their October 21, 2010 response to discovery, the Court issued an order on July 1, 2011 directing

them to do so by July 21, 2011.  (Doc. No. 134.)  Prior to receiving any documents from

Defendants, Bailey filed a third request for the production of documents on July 7, 2011.[5]  (Doc.

No. 145, Ex. 4.)  The requests in this document were basically identical to those contained in

Bailey's first Request for the Production of Documents.

On July 21, 2011, Defendants complied with a portion of this Court's July 1, 2011 order

directing them to provide Bailey with the documents they agreed to produce in their response to

his initial discovery request.  In particular, counsel for Defendants forwarded a letter to Heidi

Sroka, Assistant to the Superintendent at SCI-Somerset, Bailey's place of confinement at that

time, enclosing copies of DC-ADM 001, 003, 007, 008, 201, 203, 801, 804 and 815, as well as

---

[4]  As the previously imposed period for conducting discovery was still open at this time, Bailey's request was timely.  (See Doc. No. 93.)

[5]  The Court notes that this discovery request was served after the expiration of the imposed discovery deadline in this case.  (See Doc. No. 93.)

copies of Grievances #183912, #187318, #188856, #202112, #199098, #201625, #201419, #202113, #202754, #203323, #182853, #183329 and #185414.[6]  Counsel requested that Sroka produce the enclosed document to Bailey and have him sign and date the letter to indicate that he received the documents.  Bailey did sign and date this letter.  (Doc. No. 140, Ex. A.)

It was at this point that Bailey filed the pending motion for relief/sanctions/to compel wherein he maintains that Defendants failed to adequately respond to his discovery requests.  On August 5, 2011, Defendants submitted a second letter to Heidi Sroka attaching portions of Bailey's non-confidential medical records and DC-14 and DC-15 files from March 2007 through October 2007.  (Doc. No. 145, Ex. 5.)  Again, Sroka was requested to obtain Bailey's signature to affirm receipt of the documents.  On this occasion, he refused to sign the letter.  Sroka made a notation on the letter that Bailey stated that the documents were "not all here," and that he refused the documents and refused to sign the letter.  (Id.)  On August 22, 2011, Bailey then filed the pending supplemental motion for relief/sanctions.  (Doc. No. 141.)

2.     **Legal Standard**

In addressing the matter of discovery in a federal civil action, Federal Rule of Civil Procedure 26(b) provides, in relevant part, as follows:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature,

---

[6]  Because Defendants were unable to locate any grievance with the number 202754 filed by Bailey, they assumed it was a numerical error on Bailey's part and instead produced Grievance #202759.  Further, it appears that all grievances requested by Bailey in Request #5 were produced with the exception of Grievance #187558 because it was a grievance submitted by another inmate, and not Bailey.  Further, it also appears that the two grievances requested in Request #6 regarding the commissary issue (#197757 and #206286) were never produced.

custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(2)(C) When Required.  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues.

Although the scope of relevance in discovery is broader than that allowed for evidentiary purposes, it is not without its limits.  Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A., 144 F.R.D. 258, 265 (E.D. Pa.1992)(citations omitted).  Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information. Goodman v. Wagner, 553 F. Supp. 255, 258 (E.D. Pa. 1982); see generally 8 Charles Alan Wright, et al., Federal Practice and Procedure §§ 2007-2013 (2d ed. 1990).

However, the burden is on the objecting party to demonstrate in specific terms why a discovery request is improper.  Hicks, 168 F.R.D. at 529; Goodman, 553 F. Supp. at 258.  The

party objecting must show that the requested materials do not fall "within the broad scope of relevance ... or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure ...." Burke v. New York City Police Dep't, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). If the party served fails to respond adequately to a document request, the serving party may file a motion to compel under Rule 37(a). See Fed. R. Civ. P. 34(b), 37(a)(1)(B). Issues relating to the scope of discovery permitted under the rules rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

### 3.    Analysis

In the pending motions, Bailey seeks to compel the production of the following documents:  DOC Procedural Manuals; portions of his DC-14 and DC-15 prison records and medical file; RHU logs about the mini law library and being shackled; DOC Commissary Contracts from 1995-2005 and from 2005 to the present; and Grievances #187757 and #197757.[7] The Court will address each of these challenged Requests.

**Grievances  #187558 and #197757**

Bailey seeks copies of Grievances #187558 and #187757.  Defendants have objected to the production of Grievance #187757 on the basis that it was not written by Bailey.  In his supplemental motion for sanctions/to compel, Bailey acknowledges that the grievance was not

---

[7]  Bailey also requests that Defendants be compelled to allow him to "write his witnesses for affidavits."   The Court agrees with Defendants that this is not a proper document request under Fed. R. Civ. P. 34.

written by him, but argues that it was written by one of the former Plaintiffs that originally filed this case and verifies that problems existed in the RHU.  First, all other Plaintiffs that originally filed this action withdrew early in the case and the action was dismissed without prejudice with respect to said individuals.  Any grievance filed by one of these individuals would be with respect to incidents involving them and would have marginal, if any, relevance to the instant case.  For these reasons, the request to compel production of this grievance will be denied.  In addition, it appears that Defendants may have inadvertently failed to provide Bailey with a copy of Grievance #197757.  As such, to the extent Grievance #197757 exists and was written by Bailey, Defendants shall produce it to him within fourteen (14) days.


### Commissary Contracts

In the complaint Bailey maintains that the DOC has a monopoly on the pricing of the items sold in the prison commissary.  Through discovery, he seeks copies of commissary contracts from the period 1995-2005 and 2005-the present, as well as various commissary lists. He believes these documents will support his theory of a commissary monopoly.  First, inmates have no constitutional right be offered items to purchase in the prison commissary at or near cost. See French v. Butterworth, 614. F.2d 23, 24 (1st Cir. 1980.)  Further, even if he could state a viable claim, Bailey gives no indication as to how commissary contracts will establish his commissary monopoly theory.  In addition, in the declaration submitted by Defendants of Shirley Moore Smeal, Executive Deputy Secretary of the DOC, any relevant information with respect to commissary pricing is governed by DC-ADM 814-5 and determined by the Centralized Commissary Committee.  (Doc. No. 148, Ex. 1, Smeal Decl. ¶ 15.)  DC-ADM 815 is available to

all inmates for review at their prison's library.  (Id.)  Accordingly, Bailey's requests for the commissary contracts will be denied.

### RHU Logs to the Prison Law Library

The claims set forth in the complaint with respect to the RHU law library include the denial of ability to be in the library with a co-plaintiff inmate to work on legal material, an inadequate paging system, the requirement that an inmate wear shackles, inadequate legal material and only being permitted to attend law library once a month.  Bailey also generally challenges DC-ADM 007 which addresses Access to Provided Legal Services, as vague and failing to address these wrongs.  Defendants have produced the requested administrative directive for DC-ADM 007 which addresses the policies with respect to the law library issues raised by Bailey.  To the extent he requests RHU Mini Law Library policies on being shacked and not allowing two (2) inmates to use the law library together, Defendants have already informed Bailey that no such written policies exist.  (Doc. No. 145, Ex. 2, Defendants' Resp. To Request for Production of Docs. ¶3.)

With respect to any request for RHU logs pertaining to the law library and how it was "run in 2007,"  Defendants have previously responded to Bailey's request by informing him that the RHU log books do not reflect SCI-Huntingdon policy as to the RHU law library.  As such, the RHU logs are irrelevant for the purpose of establishing policy with respect to the library, and will not be ordered to be produced.

### Procedures Manuals

While Defendants have produced the DC-ADM policies requested by Bailey, they object to the portions of his request seeking the procedural manuals to those policies.  Specifically, they

object to the production of certain portions of the following procedure manuals: food service (§6.1.0); facility security procedures, post orders, contraband, reporting of extraordinary occurrences, protection of inmate confidential sources of information, evidence control, intelligence units (§6.3.1); administration of security of level 5 housing unit, procedures (§6.5.1); medical procedures (§§13.1.1 & 13.2.1); and discipline of DOC personnel (§4.1.1).

Defendants have provided the policies themselves for inspection, but object to the release of the above procedure manuals for the related policies. They reason that the above-referenced documents, if released, would reveal confidential information which would jeopardize the safety and security of DOC institutions. In support of this assertion, they present the declaration of Shirley Moore Smeal, Secretary of the Pennsylvania DOC. (Doc. No. 148, Ex. 1, Smeal Decl.) Secretary Smeal states that if the documents requested were made available to an inmate, the secure and orderly operation of the DOC, SCI-Huntingdon or any other correctional facility, would be seriously compromised, as well as the staff's ability to carry out a significant penological goals. (Id. at 2.)

Smeal specifically addresses each of the procedure manuals sought by Bailey as follows. With respect to §6.1.0, the Policy/Procedural Manual does not contain such a section. Rather, DC-ADM contains administrative directives regarding Food Service.[8] Section 4.1.0 of the Policy/Procedure Manual sets for th DOC policies and procedures relating to Human Resources and labor relations for DOC personnel. The procedure manual for this policy is not public information and is not to be released without prior approval of the Secretary or his designees.

---

[8] Because Bailey does not raise any claims with respect to food service, even if a procedure manual did exist, it would be irrelevant and not ordered to be produced.

13

However, non-confidential parts of the policy can be obtained at the prison library.

Procedure Manuals regarding §§ 6.3.1 and 6.5.1 contain the DOC's confidential policy/procedures for facility security and control with detailed instructions on the implementation of those procedures.  For example, §6.3.1 includes the facilities control center, perimeter construction and surveillance, inmate count and movement, escape packets, security transport of inmates and protection of inmate confidential source of information.  Section 6.5.1 addresses policy and procedures for inmates in Security Level 5 housing including Administrative and Disciplinary Custody, the Special Management Unit and the Long Term Segregation Unit.  Information is contained in the manual such as key controls, opening of cells, handcuff aperture, security patrol searches, staffing and security communications.  (Id. at ¶¶ 11.) Smeal states that the release of the type of information contained in the manuals for §§ 6.5.1 and 6.3.1 would clearly undermine the DOC efforts to ensure the safety and control of inmates, as well as the safety and security of staff and the protection of the public.  (Id. ¶ 12.)  Section 13.1.1 contains policies and procedures regarding Management & Administration of Health Care and 13.2.1 addresses Access to Health Care.  Again, these procedures manuals are not public information, and their release requires approval from the Secretary or his designee.  Non-confidential portions of these manuals may be obtained from the prison library.  (Id. at ¶13.)

Defendants have provided Bailey with not only the DOC administrative directives/ policies requested, but also portions of the procedure manuals for said sections that are not confidential.  Any other non-confidential portions of said manuals are available in the prison library.  The Court concludes that Defendants' concerns with respect to the remaining portions of the procedure manuals for the above-referenced sections are valid and must be kept

confidential in the interests of prison safety and security.  As such, Bailey's pending motions

requesting the production of said manuals will be denied.

### DC-14 and DC-15 Files/Mental Health and Medical Records

In his requests for the production of documents, Bailey asks Defendants to produce all

mental health and medical records during his confinement at SCI-Huntingdon from March of

2007 through October of 2007.  For this same time period, he also requests Defendants to

produce all of his DC-14 and DC-15 files and notes.  Defendants objected to these requests on

the basis that they were overbroad and sought irrelevant and confidential information.  Despite

the objection, however, Defendants did agree to produce all non-confidential documents

encompassed by Bailey's requests.  On August 4, 2011, they provided all documents relevant to

his claims that were not confidential to Heidi Sroka, Assistant to the Superintendent at SCI-

Somerset, for production to Bailey.  (Doc. No. 145, Ex. 5, 8/3/11 Letter.)  Bailey refused the

documents and refused to sign off on the letter indicating that he received the documents because

he claimed that all responsive documents were not produced.   In the pending motions for

sanctions/to compel, he asks the Court to direct Defendants to produce all of his medical and

mental health records along with all of his DC-14 and DC-15 files and notes for the period of

March 2007 through October 2007.[9]

In opposing Bailey's motions for sanctions/to compel, Defendants submit the declaration

of Shirley Moore Smeal, Executive Deputy Secretary of the DOC, in support of their position

---

[9] The Court notes that he also now would like the Court to direct Defendants to produce
medical records from SCI-Frackville that span a five year time period.  Because this request was
not part of a formal timely discovery request served by Bailey upon the Defendants in this
action, it will not be addressed.

that the challenged documents should not be ordered to be produced.  (Doc. No. 148, Ex. 1,

Smeal Decl.)  Smeal states she is completely familiar with the information contained in the

documents Bailey is seeking.  She states that the disclosure of these documents in their entirety

would undermine the secure and orderly operation of the DOC and seriously compromise the

DOC, SCI-Huntingdon or any other correctional facility and the ability of the staff to carry out a

significant penological goal as well as treat and rehabilitate the plaintiff.  (Id. ¶ 6.)

    With respect to the production of complete copies of his mental health and medical

records, Smeal states that these records contain frank evaluations and candid assessments of an

inmate along with psychological and psychiatric evaluations of the inmate.  If such information

were to be disclosed to an inmate, it would necessarily inhibit the staff from performing their

duties in a professional manner.  The value of staff comments and observations would be

lessened, and those making decisions regarding the inmate, including his security level and risk

factors, would be placed at a distinct disadvantage because they would not have the benefit of

candid and honest appraisals.  (Id. ¶7 .)  Moreover, disclosure of such information would

interfere with the staff's ongoing efforts to perform diagnostic testing, classification, program

assessment, evaluation, prescriptive program treatment and monitoring of the inmate in question.

The disclosure of this type of information would reveal to the inmate reviewing it the methods of

evaluation and permit the inmate to manipulate future evaluations and thereby jeopardize the

security of the institution.  (Id. ¶8.)

    With respect to the release of the complete DC-14 and DC-15 files, Smeal states that

these files contain evaluations and information regarding investigations and separations from

other inmates.  Release of this information would significantly increase the difficulty of DOC

16

staff to effectively evaluate inmates and maintain the care, custody and control of the inmates, staff and the public.  (Id. ¶9.)

Based on the foregoing, in Smeal's opinion, portions of Bailey's DC-14, DC-15 and mental health and medical records contain confidential information that, if released, would have the following consequences: undermine the secure and orderly operation of the DOC; create internal security concerns for state correctional institutions and seriously compromise the DOC and the staff's ability to carry out a significant penological goal; create concerns for the safety, security and protection of the public, the inmates and the staff; and impact upon the treatment and rehabilitation of Bailey.

Against these strong institutional interests of security and safety, the Court must weigh Bailey's need for the documents.  With respect to his request for medical and mental health records, no doubt medical records documenting requests for treatment for his skin condition, hiatal hernia, GERD and mental illness, and any record of what treatment was provided during the timeframe from March 2007 through October 2007, would be relevant to Bailey's inadequate medical care claims.  However, the Court is in full agreement that any confidential documentation with respect to comments, observations, assessments and evaluations, particularly with respect to Bailey's mental health, should not be released to him for the reasons set forth above.  As such, the Defendants will only be directed to provide Bailey with those non-confidential medical and mental health records they attempted to provide to him on August 3, 2011, which he refused to accept at that time.

The same logic applies to the DC-14 and DC-15 files.  These files typically contain much information that, if divulged to inmates, would threaten the orderly operation of the prison as

well as the security of the inmates, staff members and the public.  Bailey has been provided with

many other sources of information, including copies of the requested administrative

directives/policies and his relevant grievances.  Defendants also attempted to produce to Bailey

those portions of his medical/mental health records and DC-14 and DC-15 files/notes that were

not confidential, but he refused to accept them.  With this said, Defendants will only be directed

to produce to Bailey the portions of his DC-14 and DC-15 files that are relevant to his claims and

not confidential spanning the time period from March through October of 2007.


### 4.      Request for Sanctions[10]

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes a court to impose sanctions on a

party who violates an order of the court to "provide or permit discovery."  Sanctions for

violation of Rule 37(b)(2)(A) include orders by the court ranging from designating that certain

facts be admitted, to prohibiting the disobedient party from supporting or opposing designated

claims or defenses, to monetary damages or even the dismissal of all or part of the action.  Fed.

R. Civ. P. 37(b)(2)(A)(I)-(vii).

Whether to impose sanctions for failure to comply with discovery orders is committed to

the court's discretion.  See Flaherty v. M.A. Brunder & Sons, Inc., 202 F.R.D. 137, 141 (E.D. Pa.

2001).  In exercising this discretion, the Court is guided by the following standards.  Any

sanction imposed should be just and must be specifically related to the particular claim or claims

---

[10]  While Bailey states that he is seeking the imposition of sanctions against Defendants
pursuant to Fed. R. Civ. P. 11(c), said Rule does not apply to discovery requests, responses,
objections, and motions under Rules 26 through 37.  See Fed. R. Civ. P. 11(d).  As such, the
Court will construe Bailey's request for sanctions as made pursuant to Fed. R. Civ. P.
37(b)(2)A).

at issue in the order to provide discovery violated by the offending party.  Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites, 456 U.S. 694, 707 (1982).  Within the context of these principles, the Court is to assess the culpability of the offending party and the prejudice to the party seeking sanctions.  See Estate of Spear v. Commissioner of Internal Revenue, 41 F.3d 103, 111 (3d Cir. 1994).  In so doing, the Fed. R. Civ. P. 37(b)(2) provides a court with a variety of sanctions it may impose.

In the instant case, sanctions clearly are not warranted.  Bailey seeks sanctions for Defendants' failure to comply with this Court's order of July 1, 2011.  In that order, Defendants were directed to produce the documents that they agreed to give Bailey in their October 21, 2010 response to his Request for the Production of Documents.  They were directed to do so by July 21, 2011.  (Doc. No. 134.)  In their response to Bailey's discovery request, the only documents agreed to be produced were the Administrative Directives, any non-confidential medical and mental health records, any non-confidential documents contained in Bailey's DC-14 and DC-15 files and the copies of grievances.  While Defendants did object overall to the production of any of the medical, mental health and DC-14/DC-15 documents, without waiving this objections they did agree to produce any such documents that were not confidential.

On July 21, 2011, in accordance with the Court's July 1, 2011 order, Defendants did provide copies of the requested DOC Administrative Directives and grievances.  (Doc. No. 140, Ex. A.)  While Bailey complains that the documents were forwarded by defense counsel to the Assistant Superintendent at the prison to produce to Bailey, this is not an unusual method of providing discovery to an inmate.  It assures that the inmate receives the documents and requires him to acknowledge receipt of such by signing for them.  There are no allegations by Bailey that

the documents referenced in counsel's letter were not received or that any documents referenced in the letter were missing.  In fact, Bailey did sign the receipt indicating that he received every document sent by Defendants.

While it is true that the non-confidential medical, mental health, DC-14 and DC-15 documents were not provided on July 21, 2011, Defendants did produce these documents to the Assistant Superintendent to provide to Bailey on August 5, 2011.  Bailey, however, refused to accept the documents claiming that "documents were missing."  (Doc. No. 145, Ex. 5.)  While this did occur approximately two (2) weeks after the court-imposed July 21, 2011 date, Bailey refused to accept them not because they were late, but because Defendants did not provide the complete medical, mental health, DC-14 and DC-15 files.  He was not, however, entitled to the complete files in that Defendants had raised objections to producing the complete files.  The proper basis for challenging the objections was a motion to compel.  Although Bailey did file such a motion, the Court has now found that Defendants should not be compelled to produce the confidential portions of these records.  Thus, while Defendants may have been slightly tardy in producing the remaining documents, any prejudice to Bailey is non-existent, particularly in light of his refusal to accept the documents when they were provided to him.  For these reasons, any request for sanctions will be denied.

An appropriate order is attached.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


DEMETRIUS BAILEY,                    :          CIVIL NO. 1:CV-07-2238
    Plaintiff,                   :
                                 :             **(Chief Judge Kane)**
    v.                           :
                                 :
MELISSA McMAHON, et al.,              :
    Defendants                   :


## ORDER

    **NOW, THEREFORE, THIS 12th  DAY OF FEBRUARY, 2012,** in accordance with

the attached Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

    1.    Plaintiff's motion for counsel (Doc. No. 150) is **denied without prejudice**.

    2.    The Clerk of Court is directed to **strike** Plaintiff's proposed second amended complaint (Doc. No. 153) from the record.

    3.    Plaintiff's motion for a court order (Doc. No. 154) is **denied as moot**.

    4.    Defendant Auman's motion to dismiss the proposed amended complaint (Doc. No. 155) is **denied as moot.**

    5.    Plaintiff's motion and supplemental motion for relief/sanctions/to compel discovery (Doc. Nos. 139, 141) are **denied**.

    6.    Within fourteen (14) days, the Corrections Defendants shall provide to Plaintiff a copy of Grievance #197757 and the non-confidential medical and DC-14/DC-15 records they attempted to provide to him on August 3, 2011.

    7.    The parties may file any dispositive motions in this case within forty-five (45) days from the date of this order.


                    S/ Yvette Kane
                    YVETTE KANE, Chief Judge
                    Middle District of Pennsylvania