IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEMETRIUS BAILEY,** | : | CIVIL NO. 1:CV-07-2238 |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **MELISSA McMAHON, et al.,** | : | |
| **Defendants** | : | |

# MEMORANDUM

Demetrius Bailey ("Bailey"), an inmate currently incarcerated at the State Correctional Institution at Coal Township, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. The matter proceeds on an amended complaint. (Doc. No. 27.) Named as Defendants are numerous Department of Corrections ("DOC") officials and employees at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), Pennsylvania, Bailey's former place of confinement. Also named as Defendants are Prison Health Services ("PHS") and Angela Auman, a physician's assistant employed by PHS. The claims in the amended complaint include denial of access to the courts, denial of use of the law library, inadequate access to the commissary system, unsanitary health conditions, assault, and inadequate medical care. A motion to dismiss filed on behalf of Defendants PHS and Auman was previously granted in part and denied in part. (Doc. No. 61.) The motion was granted to the extent that PHS was dismissed from this action. The motion was denied with respect to the Eighth Amendment medical care claims and the retaliation claims raised against Auman.

Presently before the Court is a motion for summary judgment filed by Auman. (Doc. No. 164.) Bailey opposes the motion, but submitted his opposition untimely. However, because there is opposition on the record, the Court will consider Bailey's submission in addressing

Defendant Auman's pending motion.

I.     BACKGROUND

Bailey's complaint alleges incidents that took place at SCI-Huntingdon. His claims include denial of access to the courts, including the use of the law library, an adequate paging system, legal assistance and legal materials. He also complains that he was denied adequate medical and mental health treatment and basic hygiene items, and that he was subjected to abuse, torture and health hazards.[1] Bailey further complains about the inadequate commissary system and sets forth a claim of retaliation. The majority of these claims are set forth against the Corrections Defendants.[2]

Defendant Auman is alleged to have denied Bailey medical treatment for a chronic skin infection/disease from which he states he has suffered for years. Bailey states that the condition causes his skin to itch, burn, peel and bleed. He claims that the medical staff at SCI-Huntingdon, including Auman, did not know how to treat this condition, and refused to pay for outside care. Bailey states he filed a grievance with regard to this matter on March 28, 2007 (#182853), but the grievance and all related appeals were denied. Bailey also alleges that he has a hiatal hernia

---

[1] The health hazards referred to are the lack of an automatic sprinkler system, emergency lighting and fire alarms in the Restricted Housing Unit ("RHU"). He also complains that he and other inmates are forced to inhale rat and mice urine and feces in the RHU cells, and that the showers are unsanitary because they contain roaches, fruit flies and fungus. (Doc. No. 27, Amended Compl. ¶¶ 41-43.)

[2] The specifics of these incidents will not be set forth herein. This Memorandum will focus solely on the motion for summary judgment filed by Auman. A separate Memorandum and Order will be issued addressing a motion for summary judgment filed by the Corrections Defendants. While Bailey did not timely submit his opposition to the Corrections Defendants' motion, he intends that his recently submitted opposition brief and voluminous exhibits serve as his opposition to the summary judgment motions filed by both Auman and the Corrections Defendants.

with a hole in the lining of his stomach, and that Auman (and Defendant Showalter) refused to provide surgery for his condition.  As a result, Bailey contends that he vomits after ingesting cold water and foods.  He further complains that he has been denied treatment by Auman (and Defendant Showalter) for gastroesophageal reflux disease (GERD), which causes him to belch and regurgitate, irritates his throat, and makes swallowing difficult.  He further claims he was denied a proper diet for his condition, as well as an appointment with a specialist.  Bailey asserts that a grievance regarding this issue filed on April 2, 2007 (Grievance #183329), and appeals therefrom, have been denied.  Based on the foregoing, he seeks monetary, declaratory and injunctive relief.

Following the Court's ruling on the motion to dismiss filed by PHS and Auman, Auman filed an answer to the amended complaint and discovery commenced.  (Doc. No. 62.)  Discovery and dispositive motions deadlines were imposed and enlarged on several occasions to provide the parties with additional time to gather discovery, as well as permit the Court to address discovery motions.  Defendant Auman filed her pending motion for summary judgment on April 27, 2012.  (Doc. No. 164.)  A supporting brief, statement of material facts and evidentiary materials were also filed at the same time.  (Doc. Nos. 166, 167.)  On May 14, 2012, Bailey sought an extension of time within which to oppose Auman's motion.  His request was granted, and he was directed to file his opposition on or before June 15, 2012.  (Doc. No. 170.)  On June 15, 2012, Bailey again moved for an enlargement of time within which to oppose the motion.  His motion was granted and he was directed to file his opposing brief, statement of facts and evidentiary materials on or before July 16, 2012.  (Doc. No. 172.)  The time period imposed passed, and Bailey failed to submit any opposition to Auman's motion.  As such, the Court

issued an order on September 12, 2012, providing Bailey with another opportunity to submit his opposition to the pending motion for summary judgment. He was directed to submit his opposition within fourteen (14) days and warned that his failure to do so would result in the motion being deemed unopposed and addressed on the merits. (Doc. No. 173.) He failed to do so. However, he has since submitted a lengthy opposition brief and voluminous supporting exhibits. (Doc. Nos. 179, 180-84.) In the interest of resolving the claims raised by pro se litigant Bailey, the Court will consider the entire record in resolving Auman's motion for summary judgment.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[3] A fact is "material" if it will "affect the outcome of the suit under the governing law .... " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine dispute of material fact, the Court will award all reasonable inferences to the non-moving party. Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, "a mere scintilla of evidence," without more, will not

---

[3] Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard is now located in Rule 56(a) rather than Rule 56(c). Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute" ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact"), this change does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a) advisory committee's note (emphasis added).

4

give rise to a genuine dispute for trial. Anderson, 477 U.S. at 249. In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a fair-minded jury could reasonably decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989)(quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Thus, the non-movant "must point to concrete evidence in the record," and may not rely on mere allegations, conclusions, conjecture, and speculation to defeat the moving party's motion for summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

### III. Undisputed Facts[4]

In the pending motion, Auman maintains that summary judgment is warranted on all claims against her because Bailey has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). In the alternative, Auman states that Bailey has failed to come forth

---

[4] When referring to the exhibits submitted by the parties in support of their facts, the Court will cite to the page numbers appearing on the top of each document page as assigned by the Official Court Electronic Document Filing System.

with sufficient evidence for a reasonable jury to return a verdict in his favor that he was denied adequate medical care or subjected to retaliation. Along with the motion for summary judgment (Doc. No. 164), Auman filed a Statement of Undisputed Facts and supporting evidentiary materials. (Doc. Nos. 166, 167.) Bailey has failed to file a separate statement of material facts responding to the numbered paragraphs set forth in Defendant Auman's statement as required by M.D. Pa. Local Rule 56.1. However, he does include a section in his opposition brief titled "Disputed Issues" that appears to contain nineteen (19) numbered disputed facts. (Doc. No. 119 at 9.) These statements do not correspond to the statement of facts submitted by Auman.[5] To the extent any of the facts contained therein are relevant to the claims set forth against Auman and are supported by evidentiary materials submitted by Bailey, they will be included in the statement of undisputed facts. Any facts set forth and supported by Auman which are not disputed by Bailey will be deemed admitted pursuant to M.D. Pa. Local Rule 56.1. What follows are the undisputed facts relevant to the claims set forth against Auman.

The conduct Bailey complains of in this action occurred at SCI-Huntingdon where he was confined from March of 2007 to October of 2007. (Doc. No. 166-3, Ex. C, Pl.'s Dep. at 9.) His prison medical records reveal the following. On June 19, 2006, while confined at the State Correctional Institution at Graterford, Bailey complained of skin problems. He was examined and treated by Dr. Zaro. (Doc. No. 166-4, Ex. D at 61.) On July 3, 2006, he complained that he had a persistent rash for over ten years. After examining Bailey, Dr. Zaro informed him that he did not require a dermatology consult. (Id. at 62.) On August 18, 2006, Dr. Arias examined

---

[5] These statements also appear to be intended to respond to the statement of material facts submitted by the Corrections Defendants in support of their pending motion for summary judgment.

Bailey's skin and treated him for Tinea Vericolar. (Id. at 60.) On September 19, 2006, a certified registered nurse practitioner saw Bailey for a rash in his private areas and he was treated with medication. On September 26, 2006, Bailey returned to sick call and was treated for a rash. (Id. at 55.) On October 30, 2006, physician's assistant Freeman saw Bailey because of an itchy rash and provided treatment. (Id. at 53.) On December 11, 2006, Dr. Stefanic treated him for dermatitis. (Id. at 49.) On December 26, 2006, PA Freeman treated Bailey for complaints of dry skin. (Id. at 48.) On January 8, 2007, Dr. Stefanic treated Bailey's chronic dermatitis. (Id. at 45.)

On March 25, 2007, Bailey was transferred to SCI-Huntingdon. (Doc. No. 166-4 at 40.) The following day during Bailey's new prisoner intake medical review, he reported having chronic skin dryness, peeling and itching. He also stated that he had a hiatal hernia. He reported the skin condition as starting 12 years earlier. Defendant Auman, employed at the relevant time by Prison Health Services, Inc., as a physician's assistant at SCI-Huntingdon, continued the medical treatment which Bailey stated helped him previously. (Id.; Doc. No. 166-7, Auman Decl. ¶ 2.) On April 2, 2007, Bailey returned to the medical department and was seen by Auman. He requested a non-wool blanket and an enhanced snack bag. Auman requested a non-wool blanket for him, but found no medical reason for the snack bag. (Doc. No. 166-4 at 41; Doc. No. 166-7 ¶ 12.)

On April 23, 2007, Bailey refused to be seen by the Physician Assistant. The following two days, he refused to take his medication. (Doc. No. 166-4 at 41.) On April 26, 2007, Bailey requested to see a doctor. Auman scheduled him to see a doctor. (Id. at 38; Doc. No. 166-7 ¶16.) On April 27, 2007, Frederick Klemick, D.O., examined Bailey. Bailey told Klemick that

7

he had a life long skin problem and a hiatal hernia. He reported that his stomach burned and that he vomited. Bailey also requested surgery. Klemick examined Bailey and all findings were normal. He did order an upper GI to see if Bailey had any problems. (Doc. No. 166-4 at 38.)

On May 1, 2007, a nurse indicated in Bailey's chart that he refused his medication. (Id. at 36.) On May 4, 2007, Auman examined Bailey after he reported vomiting and inconsistent bowel movements. Auman informed Bailey that the doctor had ordered multiple tests for him and that he already received Prilosec. (Id. at 39; Doc. No. 166-7 ¶18.) On May 6, 2007, he refused his ordered weight check. On May 8, 2007, Bailey underwent an upper GI series which showed that his esophagus, stomach and duodenum were normal, and that he did not have a hiatal hernia. (Doc. No. 166-4 at 3.) On May 20, 2007, Bailey again refused his medications.

On May 22, 2007, PA Brown examined Bailey because he refused to take his medications. At first he claimed he did not receive the medication, but later admitted to refusing it. (Doc. No. 166-4 at 37.) On May 24, 2007, Bailey was examined by Dr. Klemick and asked to be taken off his medication because it made his stomach hurt. Klemick reviewed Bailey's earlier laboratory studies and agreed to stop all medication except for the Prilosec. (Id.)

On June 25, 2007, Bailey went to sick call and complained of an itchy, bleeding skin infection all over his body. PA Brown found nothing on Bailey's arms but mild dry skin. Her assessment was eczema. Nothing further was prescribed since Bailey was already receiving cream for his skin condition. (Id. at 32.) On June 28, 2007, Bailey saw Dr. Romeo and complained of dry itchy skin. Romeo examined him and ordered A&D skin cream for 90 days. (Id. at 14, 33.) On July 31, 2007, following a chart review, Dr. Klemick discontinued the Prilosec because of the normal upper GI study and Bailey's clinical presentation. (Id. at 33.) On

August 1, 2007, Bailey saw PA Brown and was offered Zantac for his stomach, but Bailey refused. (Id. at 30.)

On August 6, 2007, Bailey requested a sick call visit because he wanted skin cream and asked if he would be charged for the visit. Brown told him that he would be charged for an unnecessary visit since he had an existing order for skin cream. (Id.) On August 21, 2007, Bailey informed a nurse he intended to kill himself. As a result, he was placed in an observation cell and was checked every fifteen (15) minutes by nurses. (Id. at 13, 30-31.) He remained in the observation cell until August 23, 2007, when he returned to the Restricted Housing Unit. (Id. at 26-28.) On September 17, 2007, Bailey attempted to hang himself. He was thereafter returned to the observation cell with 15 minute checks. (Id. at 11, 26-27.) He was released from the observation cell on September 17, 2007.

On October 5, 2007, Bailey saw Defendant Auman. He claimed he was assaulted the night before and had pain behind his left ear, ribs, back and left thigh. Upon examination, Bailey appeared normal with the exception of a superficial avulsion with jagged edges which suggested fingernails as the etiology. Auman questioned Bailey as to whether the injury was self-inflicted. (Doc. No. 166-7 ¶ 32.) On October 6, 2007, Bailey was brought to the medical department after he started complaining that he had chest pain. (Doc. No. 166-4 at 23.) On October 18, 2007, Dr. Klemick saw Bailey and ordered a skin biopsy. (Id. at 8, 20.) Bailey was transferred from SCI-Huntingdon to SCI-Forest on October 26, 2007. Following the transfer, his ointment, shampoo and vistaril were continued as were his psychiatric medications. (Id. at 5-6, 16, 21.) A skin biopsy performed on April 8, 2008, showed that Bailey had dermatitis. (Id. at 2.)

9

The Pennsylvania Department of Corrections inmate grievance procedure is set forth in Administrative Directive 804, which is included in the Inmate Handbook given to every inmate in DOC custody. (Doc. 166-8, Ex H, Varner Decl. ¶ 4; Doc. No. 166-9, Ex. I; Doc. No. 180-1, Ex. F.) Under the DOC's inmate grievance procedure, an inmate must submit an initial grievance to the prison's Grievance Coordinator within fifteen (15) days of the incident in question. The Grievance Coordinator then assigns the grievance to the appropriate prison official or employee for a response. Following the Grievance Officer's decision, the inmate then has fifteen (15) working days to appeal to the Superintendent of the prison. Once the Superintendent's decision is made, the inmate has fifteen (15) working days to file a final appeal with the Secretary's Office. (Doc. 166-8 ¶ 5; Doc. No. 166-9 at 5-12; Doc. No. 180-1 at 61.) A grievance which is rejected or an appeal which is dismissed is different from a grievance or appeal which is denied. A rejected grievance or dismissed appeal does not lead to a finding on the merits of the issue by the DOC officer to whom it is addressed. (Doc. No. 166-8 ¶ 12.)

Pursuant to the DOC's record of the grievances filed by Bailey, he has only filed two (2) grievances against Auman (Grievances #182853 and #183329). (Doc. No. 166-8 ¶ 7; Doc. Nos. 166-5 and 166-6.) On March 28, 2007, he filed Grievance #182853 wherein he complained about the lack of treatment for his chronic skin infection. (Doc. No. 166-5, Ex. E at 6.) On April 3, 2007, this grievance was denied by Grievance Officer Showalter. (Id. at 5.) Showalter informed Bailey that his medical record had been reviewed, and that it revealed that he had been seen the day following his arrival at the prison. Auman reviewed his complaints at that time and prescribed treatment that Bailey had indicated was helpful. Because Bailey had since failed to complain to the medical staff about any issues raised in his grievance, he was informed he

10

needed to sign up for sick call to be evaluated. (Id.) Bailey appealed this grievance denial to the Superintendent at SCI-Huntingdon and indicated he needed to see a dermatologist. (Id., Ex. E at 4.) On April 13, 2007, Superintendent Wakefield denied the appeal, and noted that if Bailey had a medical problem he needed to sign up for sick call to be evaluated. (Id. at 3.) Bailey appealed this grievance to the Secretary's Office for final review. On April 20, 2007, the Secretary's Office indicated that the had not supplied the required documentation. As such, the appeal was dismissed. (Id. at 2.)

On April 2, 2007, Bailey filed Grievance #183329 wherein he complained that he was having a problem with receiving medical treatment from Defendant Auman. Specifically, he stated that he had a hole in his stomach causing him to vomit all cold foods and water, and that Auman refused to give him a medical pass for a cotton blanket due to his skin infection. He claimed that the wool blanket made his skin condition itch and burn. He also claimed that he qualified for an enhanced diet bag which was also denied by Auman. (Id. at 10.) On April 13, 2007, this grievance was denied by Grievance Officer Showalter. (Id. at 9.) Showalter noted that since his transfer to SCI-Huntingdon, Bailey had been seen twice. The first time was upon intake and the second time was the following week at sick line. He was informed that Auman had requested a non-wool blanket for him, but that it is the Unit Manager, and not the medical department, that would address such an issue. Further, Bailey was advised that he did not meet the criteria for an enhanced snack bag because it was not medically necessary.

Bailey appealed the denial of this grievance to the Superintendent. (Id. at 8.) The Superintendent denied the appeal on April 17, 2007. (Id. at 7.) On April 26, 2007, the Secretary's Office informed Bailey that his request for appeal to final review with respect to

11

Grievance # 183329 was acknowledged as received on April 23, 2007, but was dismissed in that he failed to provide the required documentation relating to said appeal. (Doc. No. 180-1 at 90.) He was referred to the letter the Secretary's Office had previously sent to him dated May 31, 2005, warning him that any subsequent appeals to the Secretary's Office that did not include the necessary documentation would be dismissed. With respect to his appeal on Grievance # 183329, Bailey had failed to include the initial grievance, the initial response, the appeal to the Superintendent, and the Superintendent's response. (Id.)

**IV.    Discussion**

Defendant Auman maintains that Bailey has procedurally defaulted on the claims raised against her by failing to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). This section provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement, whether on the ground of

futility, inadequacy or any other basis." Id. at 73 (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement. Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S. Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 2387 (quoting Porter, 534 U.S. at 525.) Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. Id. at 232.

The Pennsylvania DOC had a three-tiered grievance procedure in effect at the time Bailey contends he received inadequate medical care and was retaliated against that appears in DC-ADM 804. Pursuant to this procedure, inmates are first encouraged to express their

13

concerns to staff by written or verbal communication in an attempt to resolve the problems as soon as possible. Where the concern is unable to be resolved, the inmate is then encouraged to attempt informal resolution by use of a DC-135A Inmate Request to Staff form submitted to the Unit Manager (Doc. No. 166-9 at 4, DC-ADM 804, VI(A).) Following any informal resolution attempts, an inmate has the right to file an initial review grievance with the Facility Grievance Coordinator. (Id. at 5, DC-ADM 804, VI(B).) Next, he may appeal an Initial Review decision to the Facility Manager. (Id. at 7-8, DC-ADM 804, VI(C).) Finally, if the inmate is dissatisfied with the disposition of an appeal from the Facility Manager, he may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals. (Id. at 9-12; DC-ADM 804, VI (D).) An inmate appealing a grievance to final review is responsible for providing the Secretary's Office with all required documentation relevant to the appeal. This appeal paperwork includes photocopies of the initial grievance, initial review response, the inmate appeal to the Facility Manager, and the Facility Manager's decision. Failure to provide the proper documentation may result in the appeal being dismissed. (Id. at 10; DC-AM 804,VI(D)(g).)

The evidentiary materials submitted by Auman in support of her motion for summary judgment include copies of the grievances filed by Bailey and the responses thereto, the DOC's grievance procedures in effect at the relevant time, and the declaration of Dorina Varner, Chief Grievance Officer for the Secretary's Office of Inmate Grievances & Appeals. In her capacity as Chief Grievance Officer, Varner has access to the DOC's Automated Inmate Grievance Tracking System. (Doc. No. 166-8, Ex. H ¶ 11.) According to Varner, and as supported by the undisputed evidentiary materials in the record, Bailey filed only two grievances and no determination by the Secretary's Office of Inmate Grievances and Appeals occurred on the

14

merits with respect to either grievance. Bailey submits no evidentiary materials disputing these facts. Rather, he submits copies of the same grievances and documents related thereto. The Secretary's Office dismissed both appeals due to Bailey's failure to provide the necessary supporting documents along with his appeals. (Id. ¶¶ 11, 13.) As such, Bailey did not complete all three required steps of the inmate grievance procedure as set forth in DC ADM 804 and failed to exhaust his administrative remedies. See Spruill, 372 F.2d at 234.

In opposing Defendant's motion, Bailey states in his brief that Defendant tries to confuse the Court and lie about whether he exhausted grievances # 182853 and #183329. At first he argues that he placed his appeals and documents in the hands of the correctional officers and that if the Secretary's Office did not receive them it is not his fault. (Doc. No. 179 at 8.) However, he fails to offer one shred of evidentiary support that he, in fact, did so. He offers no declarations or affidavits of any sort. More importantly, the undisputed evidence reveals that he did submit his appeals to the final level of the Secretary's Office with respect to both of these grievances, but that he failed to include the necessary documents with the appeals. As a result, he was notified by the Secretary's Office that his appeals were dismissed due to the fact that he had been warned on prior occasions that any future appeals filed without the required supporting documents would be immediately dismissed. (Doc. No. 166-8 at 9 and 15, Letters dated 4/20/07 and 4/26/07.) While it is undisputed by Defendant that Bailey thereafter attempted to resubmit the appeals to the Secretary's Office, it was too late at this point. His appeals were already dismissed for failure to include the necessary documentation. (Doc. Nos. 166-8 and 180-1 at 92, Letter of 5/7/07.)

In his opposition brief Bailey also argues that he never received prior notification from

15

the Secretary's Office that all necessary documentation was required to be submitted with appeals that are filed. (Doc. No. 179 at 13.) The record lacks any support for this self-serving assertion contained in his brief. Rather, the undisputed record belies any such argument in that even if he claims not to have received the initial warning about including required documentation, this requirement is clearly set forth in ADM-DOC 804, VI(D)(g). Moreover, he was almost certainly aware of this requirement with respect to the dismissal of earlier appeals on the same basis which would have generated the letter of May 31, 2005 from the Secretary's Office. Bailey's claims against Auman have never been addressed on the merits by the final level of administrative review. For these reasons, summary judgment is warranted in favor of Auman on the basis of failure to exhaust administrative remedies.[6] An appropriate order follows.

---

[6] Because the exhaustion argument is dispositive of the claims set forth against Auman, Auman's alternative arguments in support of summary judgment will not be addressed.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMETRIUS BAILEY, | : | CIVIL NO. 1:CV-07-2238 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| MELISSA McMAHON, et al., | : | |
| Defendants | : | |

# ORDER

**NOW, ON THIS 29th DAY OF MARCH 2013,** for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT** Defendant Auman's motion for summary judgment (Doc. No. 164) is **granted**. Summary judgment is granted in favor of Defendant Auman and against Plaintiff on all claims. Defendant Auman is dismissed from the above-captioned action.

S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania