```
                   UNITED STATES DISTRICT COURT
                            FOR THE
                   MIDDLE DISTRICT OF PENNSYLVANIA

DEMETRIUS BAILEY,                :
                                 :
        Plaintiff                :     CIVIL NO. 1:07-CV-02238
                                 :
    vs.                          :
                                 :
MELISSA MCMAHON, et al.,         :     (Judge Kane)
                                 :
        Defendants               :
```

### MEMORANDUM

I.  **Background**

This is a civil rights action filed under 42 U.S.C. § 1983 by Demetrius Bailey, a state inmate currently confined at the State Correctional Institution at Forest, Marienville, Pennsylvania ("SCI-Forest").

The original complaint was filed on December 10, 2007, by twelve plaintiffs against 20 defendants. On January 28, 2008, all of the plaintiffs except Bailey were terminated from this action based on requests to withdraw or their failure to pay the filing fee or submit applications to proceed in forma pauperis and authorization forms to have funds deducted from their prison trust fund accounts. Doc. 21. Furthermore, the court granted Bailey in forma pauperis status, reviewed the complaint and directed Bailey to file an amended complaint on or before February 19, 2008, which deadline was extended to March 17, 2008, by order of February 19, 2008. Doc. 25.

On March 10, 2008, Bailey filed an amended complaint which named sixteen defendants and raised a plethora of claims regarding conditions to which Bailey was subjected during his confinement from March 23, 2007, to October 29, 2007, at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). Doc. 27. Named as Defendants were individuals employed by the Pennsylvania Department of Corrections ("Corrections Defendants"), Prison Health Services ("PHS") and Angela Auman, a physician assistant employed by PHS. Id.

A motion to dismiss filed by PHS was granted on March 19, 2009. Doc. 61. On April 12, 2012, the court addressed several discovery related matters. Doc. 162. A motion for summary judgment filed by Auman was granted on April 1, 2013. Doc. 187.

On October 10, 2012, a motion for summary judgment was filed by the Corrections Defendants. Doc. 174. On December 10, 2014, the court granted the motion, and summary judgment was rendered in favor of the Corrections Defendants. Doc. 206. Remaining in the action were Bailey's First Amendment retaliation claims against two corrections officers, Donald Fortney and Richard Hinkle, and Parks' claims relating to conditions in the Restricted Housing Unit at SCI-Huntingdon (i.e., lack of an automatic sprinkler system, emergency lighting, unsanitary showers, and infestation of rodents, roaches, bugs and fruit flies resulting in inmates inhaling rodent urine and feces and causing

him to suffer a fungal skin infection).[1] Id. With respect to the retaliation claim, Bailey alleged that Defendants Fortney and Hinkle threw a legal brief of his in the trash in retaliation for filing complaints against prison guards. The Corrections Defendants did not address this claim or the conditions of confinement claims in their supporting brief. However, the order granting summary judgment authorized the Corrections Defendants twenty (20) days to file a further dispositive motion with respect to the remaining retaliation claims and the conditions of confinement claims. Id.

On December 30, 2014, the Corrections Defendants filed a motion for summary judgment, a statement of material facts in accordance with Local Rule 56.1 along with evidentiary materials, and a brief in support of the motion. Docs. 208, 209, 210 and 211. Corrections Defendants argue that based on the evidence of record and the legal standards applicable to First Amendment retaliation claims no reasonable jury could conclude that Defendants Fortney and Hinkle retaliated against Bailey for filing complaints against prison guards. The Corrections Defendants further argue that with respect to the remaining conditions of confinement claims Bailey failed to exhaust his available administrative remedies. On February 3, 2015, Bailey filed a one-page brief in opposition, a one-page statement of material facts consisting of 5 paragraphs

---

1. Also, on December 10, 2014, the claims against six of the defendants were dismissed based on a stipulation of the parties. Doc. 206.

and a document entitled "Objections to Defendants' Motion for Summary Judgment." Doc. 212, 213 and 214. None of these documents were notarized or signed under penalty of perjury pursuant to 28 U.S.C. 1746 and consequently cannot be considered evidentiary materials. Moreover, the documents do not contravene the 35 numbered paragraphs set forth in the Corrections Defendants' statement of material facts in accordance with Local Rule 56.1.[2] For the reasons set forth below, the court will grant summary

---

2. Local Rule 56.1 provides as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraph set forth in the statement required in the foregoing paragraph; as to which it is contended that there exists a genuine issue to be tried.
>
> <u>Statement of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.</u>
>
> <u>All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.</u>

M.D. Pa. LR 56.1 (emphasis added). A standard practice order was issued on December 10, 2007, which advised Bailey of the requirements of several Local Rules of Court, including Local Rule 56.1. Doc. 4.

judgment in favor of the Corrections Defendants with respect to the remaining claims.

## II. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation,

963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 by identifying evidence which demonstrates the absence of a genuine issue of material fact, Rule 56 requires that the nonmoving party go beyond the pleadings to demonstrate specific material facts which give rise to a genuine issue through affidavits, depositions, answers to interrogatories or the like. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**III.    Statement of Facts**

Here, the defendants's statement of material facts is supported by evidentiary materials. The first portion provides in relevant part:

> 3. The Department has established an inmate grievance review system, Administrative Directive 804 (DC-ADM 804), to provided prisoners in its custody with a regular procedure to resolve problems or other issues arising during the course of their confinement. See Exhibit 1, ¶2, Attachment A. Attached as Exhibit 1 is a true and correct copy of the Unsworn Declaration of Dorina Varner.[3]
>
> 4. Pursuant to DC-ADM 804, any inmate personally affected by a Department or institutional action or policy or by the action of a Department employee may file a grievance after attempting to resolve the issue informally. <u>Id.</u>
>
> 5. The grievance must include a statement of facts relevant to the claim. The inmate should identify anyone who may have information that could be helpful in resolving the grievance. The inmate must also specifically state any claims he or she wishes to make concerning violations of Department directives, regulations, court orders, or other laws. <u>Id.</u>
>
> 6. Upon receipt, the Facility Grievance Coordinator will refer a properly submitted grievance to a staff member not involved in the case to make a written response to the grievant. <u>Id.</u>
>
> 7. If the inmate is dissatisfied with the initial response, he may appeal that decision to the Facility Manager (Superintendent). <u>Id.</u>
>
> 8. The Facility Manager provides a written response to the grievant. Any grievant who is not satisfied with the decision of the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals. Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed at this level. <u>Id.</u>

---

3. All of the declarations submitted by the Corrections Defendants were properly verified in accordance with 28 U.S.C. § 1746.

9. The Secretary's Office of Inmate Grievances and Appeals reviews the original grievance and the Initial Review Response, the appeal to the Facility Manager and the response, along with the appeal to final review. The Secretary's Office of Inmate Grievances and Appeals issues a final decision and a copy of the decision is provided to the grievant and to the Facility Manager and a copy is maintained in the Secretary's Office of Inmate Grievances and Appeals. Id.

10.  The Secretary's Office of Inmate Grievances and Appeals also maintains an Inmate Grievance Tracking System, which tracks grievances that are filed by inmates.

11. The Grievance Tracking System identifies the inmate's name, and institutional number and includes the grievance number, the date the grievance was received, a description of the grievance, the disposition of the grievance, the date the grievance was appealed (if appealed) and the date [] of final review of the grievance if appeal[ed].

12.  Inmates are not permitted to pass documents or items from one cell to another by sliding them on [the] tier floor. This activity is not permitted and an inmate can receive a Misconduct Report . . . .

13.  Inmates are not permitted to [] throw things from their cells onto the tier floor and this behavior is subject to an institutional Misconduct and disciplinary action. . . .

14. Inmates are also responsible for their own property and if property was discarded by an inmate and found on the tier floor, it is considered trash along with other refuse and disposed of by staff. . . .

15.  On April 21, 2007, Officer Fortney was working the 10 pm to 6 am shift in the RHU.  As part of his duties and responsibility he collected the trash from the tier floor and placed the trash in the RHU command center trash cans. . . .

16. . . . Fortney did not review or look through any of the trash that he placed in the trash cans. . . .

17.  Sergeant Hinkle was in the command center when officer Fortney put the trash from the block into the trash cans.  Sgt. Hinkle did not collect the trash

> from the tier floor on that date . . . .
>
> 18. Sgt. Hinkle did not look through any of the trash that was brought into the command center that was placed in the trash cans nor did he order that any of Bailey's legal documents be destroyed. . . .
>
> 19. The trash cans in the RHU command center were routinely picked up and emptied the following morning by staff. . . .
>
> 20. At no time did Sgt. Hinkle destroy any of Bailey's legal papers or directed that any of his legal papers be destroyed. . . .

Doc. 209. The statement of material facts goes on to (1) indicate that Bailey admitted in his deposition that his "legal paperwork" was outside his cell, and that "somebody put it out there for me to get when somebody come (sic) around," (2) describe the grievance and appeals filed by Bailey with respect to the retaliation claim and (3) concedes that Bailey exhausted his administrative remedies with respect to the retaliation claim. Bailey further admitted that the loss of the "legal paperwork" did not cause a legal proceeding filed by him to be dismissed. The second relevant portion of the Corrections Defendants' statement of material facts addresses Bailey's condition of confinement claims as follows:

> 32. A review of the inmate tracking system reveals that while at SCI-Huntingdon, Bailey did not file any grievances regarding fire and fire prevention, automatic sprinkler systems, emergency lighting and fire alarms in the RHU at Huntingdon. . . .
>
> 33. A review of the inmate tracking system further reveals that while at SCI-Huntingdon Bailey did not file any grievances regarding unsanitary showers, roaches, fruit flies and bugs that cause him a fungal infection in his skin while in the RHU at SCI-Huntingdon. . . .

>34. A further review of the inmate tracking system [reveals] that Bailey did not file any grievances regarding unsanitary conditions of the SCI-Huntingdon RHU including inhaling rat and mice urine and feces or rats running in the cells looking for food. . . .
>
>35. . . . Bailey's medical notes, upon his transfer to SCI-Huntingdon in March, 2007, noted that his arms and legs and the majority of the surface of his skin was peeling. The medical notes further reveal that Bailey told the Physician Assistant that he had this condition for 12 years. . . .

Id. The Corrections Defendants' statement of material facts was supported by (1) declarations under penalty of perjury from several individuals, including Dorina Varner, the Chief Grievance Officer for the Pennsylvania Department of Corrections and Defendants Fortney and Hinkle; (2) documents, including Policy Statement DC-ADM 804 and Bailey's Medical Progress Notes maintained by the Department of Corrections; and (3) excerpts from Bailey's Deposition dated July 19, 2010. Doc. 210.

As stated earlier, in response to the Corrections Defendants' statement of material facts and evidentiary materials Bailey merely submitted a 5-paragraph statement of undisputed material facts but no evidentiary materials. That unsworn statement is as follows:

>1) Plaintiff exhausted all administrative remedies to grievance concerning throwing legal brief in trash.[4]
>
>2) Plaintiff did not receive a misconduct for legal

---

4. Bailey did not indicate that he exhausted his administrative remedies with respect to the conditions of confinement claims.

>     briefs sitting outside of his cell.
>
>     3) Witnesses can testify that Defendants threw a (sic) active case against the DOC in the trash out of retaliation. Richard Sutton AM5242.[5]
>
>     4) Defendant Fortney cannot show a policy where they collect or clean up the tier on 10-6 shift.
>
>     5) Defendants cover up throwing legal briefs in the trash by denying the grievance.

Doc. 213. As stated no evidentiary materials were submitted or referred to by Bailey in support of his statement. Bailey's statement does not satisfy Local Rule 56.1 in that it does not contravene the statement submitted by the Corrections Defendants.

**IV.  Discussion**

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied upon showing that "the action 'was sufficient to deter a person of ordinary firmness from exercising

---

5.  Bailey did not submit an affidavit from Richard Sutton.

his First Amendment rights.'" Id. (quoting Allah, 229 F.3d at 225).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him" or take the adverse action  Id. (quoting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Id. at 334.

      First, the record does not support a finding that Bailey has met the first prong of the test.  Although it is conceded that the discarded document was a legal brief, the record establishes that under prison regulations, because of its location, it was properly discarded as trash.  Inmates are permitted to possess legal documents, but this right is not unfettered.  The regulation relating to placing items on the tier floor and keeping the tier floor clean clearly serves a legitimate penological interest.  For the same reasons, no reasonable jury could find that Bailey suffered an adverse action.  Finally, there is no evidence from which a jury could reasonably find the third element.  The burden was on Bailey to present evidence establishing that Defendants

Hinkle and Fortney were aware of grievances or lawsuits filed by him.  This he failed to do.  The record evidence reveals that Fortney merely cleared the trash from the tier floor and placed it in the disposal containers in the RHU command center.  Furthermore, there is no evidence that Fortney or Hinkle reviewed the trash before discarding it.  Consequently, no jury could reasonably conclude that the actions of Hinkle and Fortney were motivated by some activity engaged in by Bailey which was protected by the First Amendment.

As for Bailey's conditions of confinement claims, the record on summary judgment clearly demonstrates failure to exhaust his administrative remedies.  Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S.Ct. 2378 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion

13

requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 126 S.Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

As detailed above, the Pennsylvania Department of Corrections has a comprehensive administrative remedy mechanism in place. The summary judgment record establishes conclusively that Bailey did not file any grievances regarding the remaining Eighth Amendment condition of confinement claims. Consequently, the Corrections Defendants are entitled to summary judgment in their favor with respect to those claims.

An appropriate order will be entered.